1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

FELIX DELLOMES,                                          NO.  C14-425-JLR-JPD

9

                                    Plaintiff,

10

        v.                                                      REPORT AND
                                                                RECOMMENDATION
11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12

                                    Defendant.

13

14

        Plaintiff Felix Dellomes appeals the final decision of the Commissioner of the Social

15

Security Administration ("Commissioner") which denied his applications for Disability

16

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19

the Commissioner's decision be AFFIRMED.

20

I.        FACTS AND PROCEDURAL HISTORY

21

        At the time of the administrative hearing, plaintiff was a fifty-nine year old man with a

22

high school education and some college.  Administrative Record ("AR") at 45, 155.  His past

23

work experience includes employment as an automobile salesman.  AR at 45, 58-60.  He was

24

last gainfully employed in August 2008.  AR at 155.

REPORT AND RECOMMENDATION - 1

1   Plaintiff filed applications for SSI payments and DIB in September 2010, alleging

2   disability since August 1, 2008.  AR at 114-18.  Plaintiff asserts that he is disabled due to

3   diabetes, depression, arthritis, gout, asthma, allergies, hay fever, and cataracts.  AR at 48-50.

4   The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 65-

5   66.  Plaintiff requested a hearing, which took place on June 26, 2012.  AR at 42-64.  On

6   October 5, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits

7   based on his finding that plaintiff could perform a specific job existing in significant numbers

8   in the national economy.  AR at 18-38.  Plaintiff's request for review by the Appeals Council

9   was denied, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as

10   that term is defined by 42 U.S.C. § 405(g).  On March 24, 2014, plaintiff timely filed the

11   present action challenging the Commissioner's decision.  Dkt. 1.

12   II.   JURISDICTION

13   Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

14   405(g) and 1383(c)(3).

15   III.   STANDARD OF REVIEW

16   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

17   social security benefits when the ALJ's findings are based on legal error or not supported by

18   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

19   Cir. 2005).  "Substantial evidence"  is more than a scintilla, less than a preponderance, and is

20   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

21   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

22   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

23   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

24   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

REPORT AND RECOMMENDATION - 2

whole, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed

and further administrative proceedings would serve no useful purpose." *McCartey v.

Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Dellomes bears the burden of proving that he is disabled within

the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.    DECISION BELOW

On October 5, 2012, the ALJ issued a decision finding the following:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful activity since August 1, 2008, the alleged onset date.

3.  The claimant has the following severe impairments: diabetes mellitus, hypertension and depressive disorder.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium, simple work as defined in 20 CFR 404.1567(c) and 416.967(c) except lift, carry, push and pull up to 25 pounds frequently and 50 pounds occasionally, stand and/or walk about 6 hours in an eight-hour workday, sit about 6 hours in an eight-hour workday, no assistive device needed, no limitations on climbing, balancing, kneeling, crawling, bending, crouching and stooping, no limitations on walking on uneven terrain, climbing ladders and working at heights, no hand use impairment, no fine fingering manipulation impairment, occasionally work outdoors due to history of hay fever and asthma and frequent exposure to fumes, dust, pollution, extremes in temperature, gases and chemicals.  There are no severe visual limitations lasting for 12 continuous months. Mentally, the claimant retains the mental residual functional capacity to understand, remember, and carry out simple work-related tasks, no limitations in the ability to sustain concentration, persistence or pace on such tasks, no limitations on the ability to relate to others, and no limitations on the ability to adapt to the requirements of the normal workplace.

6.   The claimant is incapable of performing past relevant work as an auto salesman.

7.   The claimant was born on XXXXX, 1952 and was 55 years old, which is defined an advanced age individual, on the alleged disability onset date of August 1, 2008.[2]

8.   The claimant has at least a high school education and is able to communicate in English.

9.   The vocational expert testified that the claimant has no transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2008, through the date of this decision.

AR at 34-38.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.   Did the ALJ err by finding that plaintiff's gout and vision problems were not severe at step two, or in accounting for plaintiff's non-severe impairments in the RFC assessment?

2.   Did the ALJ err in evaluating plaintiff's credibility?

3.   Did the ALJ err at step five?

Dkt. 11 at 1; Dkt. 12 at 1-2.

## VII.   DISCUSSION

A.   The ALJ Did Not Err at Step Two, or in Accounting for Plaintiff's Non-Severe Impairments

Plaintiff argues that the ALJ erred by failing to find plaintiff's gout and vision problems to be severe impairments at step two, because these impairments had more than a minimal effect on plaintiff's ability to perform basic work activities.   Dkt. 11 at 12-13.   Plaintiff points

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1   out that the medical records indicate that plaintiff was diagnosed with and treated for gout.  *Id.*

2   (citing AR at 272-73, 280, 287).  In addition, plaintiff testified at the hearing that he has

3   experienced attacks of gout three to five times per month lasting seven to eight days at a time,

4   and during these attacks he has difficulty standing and walking.  AR at 49.  With respect to

5   plaintiff's vision, plaintiff argues that he was diagnosed with cataracts, diabetic retinopathy,

6   and epiretinal membrane during the relevant period and therefore his vision problems should

7   be considered severe impairments.  AR at 278, 281.  A treatment note dated July 15, 2011,

8   stated that plaintiff was supposed to undergo two surgeries on his right eye.  AR at 275.

9   During her evaluation, consultative evaluator Ursula Taylor, M.D. noted uncorrected vision of

10  20/200 (with a pinhole correction of 20/70) in his right eye and uncorrected vision of 20/40 in

11  his left eye.  AR at 221.  She opined that plaintiff "appears to have significant diabetic

12  retinopathy with poor vision in the right eye[.]"  AR at 223.  In addition, plaintiff testified that

13  he was unable to drive a car, read fine print, and that computer screens were blurry.  AR at 55-

14  56.

15          The Commissioner responds that the ALJ properly found that plaintiff's gout and vision

16  problems were not severe impairments at step two because the medical evidence did not show

17  that these impairments would have caused more than a slight limitation in plaintiff's ability to

18  perform work activities.  Dkt. 12 at 4 (citing AR at 28-30).  For example, Dr. Taylor concluded

19  that "he has mild visual limitation due to poor vision in the right eye, but appeared to have

20  good vision in the left eye."  AR at 223.  The Commissioner argues that even if the ALJ erred

21  at step two, any error was harmless because the ALJ's RFC assessment accounted for

22  plaintiff's non-severe impairments.  Dkt. 12 at 6.

23          At step two, a claimant must make a threshold showing that his medically determinable

24  impairments significantly limit his ability to perform basic work activities.  *See Bowen v.*

*Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

The ALJ did not find plaintiff's gout or vision problems to be severe impairments at step two. With respect to plaintiff's gout, the ALJ found that his symptoms are "controlled with treatment. The record does not show that he has flares that occur at a frequency, severity and duration that precludes regular and ongoing work activity. The objective medical records do not show that the claimant has symptoms or end organ damage that limit the claimant's functioning for any continuous 12-mont period." AR at 29. Thus, the ALJ concluded that the medical record "does not corroborate the claimant's testimony of extreme constant, frequent and prolonged gout attacks." AR at 29.

In discussing plaintiff's vision problems, the ALJ did not "give weight to the mild visual limitation the consultative examiner suggested exists due to poor vision in the right eye with good vision in the left eye, because the longitudinal record does not document severe visual

REPORT AND RECOMMENDATION - 8

limitations lasting for 12 continuous months." AR at 31. The ALJ further noted that "even if the suggested limitation were considered, the consultative examiner said that it was only mild, and that would be consistent with no constant visual activities, that is, that he should be limited to no more than frequent near acuity, far acuity, depth perception, accommodation, color vision, and field of vision[.]" AR at 31. Although plaintiff has cataracts and was told he needs to have cataract surgery and additional eye surgery (retraction), "the record does not show that the claimant has visual loss or visual symptoms that limit the claimant's functioning or ordinary visual tasks for any continuous period of 12 months." AR at 30. In addition, the ALJ noted that plaintiff "has access to eye treatment through the County hospital," which will perform plaintiff's eye surgeries. AR at 30.

The ALJ properly determined that plaintiff's gout was not a severe impairment at step two. AR at 272-73, 280, 287. Plaintiff has not identified any evidence to corroborate his testimony at the hearing that he has experienced attacks of gout three to five times per month lasting seven to eight days at a time, causing him to have difficulty standing and walking. AR at 49-50, 280, 287. For example, an Outpatient Clinical Report from the Harbor-UCLA Medical Center from February 2012 indicated that plaintiff's "gout is controlled" with his medication. AR at 272. Furthermore, the ALJ reasonably concluded that the objective medical evidence does not evince symptoms of organ damage that limited plaintiff's functioning. AR at 29, 221-23 (consultative evaluation noting plaintiff's report of a history of gout, but finding no other limitations associated with gout based on examination), 272 ("gout is controlled" with medication). Thus, the ALJ did not err by concluding that plaintiff's gout was adequately controlled with treatment, and was not a severe impairment. AR at 29.

The ALJ could also reasonably conclude that plaintiff's vision problems, including diabetic retinopathy in his right eye, were not severe impairments. AR at 30. On April 2l,

2011, plaintiff presented at the Harbor-UCLA Medical Center eye clinic complaining of blurred vision.  AR at 281.  He had 20/100 vision in the right eye, 20/60 in the left eye, normal intra-ocular pressure, and no diabetic retinopathy.  AR at 281.  During the consultative evaluation conducted by Dr. Taylor only five days later on April 26, 2011, Dr. Taylor acknowledged that plaintiff has "significant diabetic retinopathy with poor vision in the right eye," AR at 223, and noted uncorrected vision of 20/200 (with a pinhole correction of 20/70) in his right eye.  AR at 221.  Overall, Dr. Taylor concluded that plaintiff has "mild visual limitation due to poor vision in the right eye, but . . . good vision in the left eye."  AR at 221-23.  Treatment notes from a few months later, July 2011, evince a diagnosis of cataracts, diabetic retinopathy, and epiretinal membrane, AR at 278, and provide that plaintiff requires cataract surgery followed by retina surgery on his right eye, AR at 275.

Although plaintiff's right eye will require surgery in the future, plaintiff has not provided any evidence showing that the ALJ erred by failing to include additional limitations in the RFC assessment due to plaintiff's "mild visual limitation."[3]  As the ALJ found, there is no evidence in the record that his vision problems in his right eye will have more than a "minimal effect" on plaintiff's ability to work.  *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28).[4]  Plaintiff testified that he would "like to get my eyes repaired so that I can see better to do, perform more things as they were before."  AR at 56.  He noted that is unable to read "fine print reading books, newspapers, menus, things like that . . . *Not*

---

[3] As noted above, the ALJ did not include visual limitations in the RFC assessment because she found that "there are no severe visual limitations lasting for 12 continuous months."  AR at 34.

[4] The Court notes, however, that plaintiff's possession of a valid California driver's license in June 2011 does not necessarily undermine plaintiff's testimony that he was no longer comfortable driving due to his diminishing eyesight.  AR at 226.  Indeed, plaintiff was driven to the consultative examination (where it was noted that plaintiff still had a valid driver's license) by his wife.  AR at 225.

REPORT AND RECOMMENDATION - 10

*without my glasses I have here* but they're outdated and their, their vision is, until I get the eye operations they can't give me new glasses until I can see better after the operations."  AR at 56. Without more, plaintiff's testimony that computer screens appear blurry to him and his visual impairment prevent him from driving a car or reading fine print "without his glasses" is insufficient to establish the existence of a severe impairment at step two.  AR at 55-56.

Even assuming that the ALJ erred by failing to account for plaintiff's "mild visual limitation" in the RFC assessment, regardless of whether it is properly considered a severe or non-severe impairment, plaintiff has not provided any evidence that this error was harmful. None of the three jobs identified by the vocational expert at step five would be precluded.  The ALJ noted "even if the suggested limitation [by consultative examiner Dr. Taylor] is considered," plaintiff's visual limitation is "only mild, and that would be consistent with no constant visual activities, that is, that he should be limited to no more than frequent near acuity, far acuity, depth perception, accommodation, color vision, and field of vision," as "no treating doctor found the claimant more physically limited."  AR at 31.  At step five, the ALJ found that plaintiff could perform the representative jobs of laundry worker (DOT #361.685-018), hospital cleaner (DOT #323.687-010), and factory helper (DOT #529.687-034), noting that all of these jobs did not require more than frequent near acuity, far acuity, depth perception, accommodation, color vision and field of vision.  AR at 33.  The ALJ concluded that "the visual requirements for these alternate jobs are minimal, that is, only one of the jobs requires occasional near acuity and that all other visual requirements for the three jobs are rated as not present.  Thus, even if the claimant were limited to frequent or occasional near acuity, far acuity, depth perception, accommodation, color vision, and field of vision, he could still do the jobs named."  AR at 37.

Accordingly, even if the ALJ erred by failing to include specific visual limitations in the RFC assessment based upon Dr. Taylor's opinion, the ALJ's error was harmless because the ALJ's findings at step five would be unaffected by these additional limitations.  AR at 37. Plaintiff's conclusory assertion that plaintiff's "actual limitations" would have precluded the jobs identified by the VE, without more, is insufficient to establish harmful error.  *See* Dkt. 11 at 15.

> B.      The ALJ Did Not Err in Evaluating Plaintiff's Credibility

> 1.      *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

> 2.    *The ALJ Provided Several Clear and Convincing Reasons for Finding Plaintiff Less Than Fully Credible*

The ALJ found that she "cannot find greater functional limitations or total disability based on the [plaintiff's] subjective complaints because they are not fully credible." AR at 35. Specifically, the ALJ found that plaintiff's alleged limitations are (1) inconsistent with the objective medical evidence, (2) inconsistent with plaintiff's treatment, as well as his history of non-compliance with treatment recommendations, (3) inconsistent with plaintiff's daily activities, (4) undermined by plaintiff's failure to be "entirely forthcoming about the source of his income after the alleged onset date," and (5) undermined by plaintiff's inconsistent statements regarding his vision and ability to leave the house. AR at 35-36.

> (a)    *Objective Medical Evidence*

The Ninth Circuit has asserted that although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of a claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96–7, *2–3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not

REPORT AND RECOMMENDATION - 13

be disregarded solely because they are not substantiated by objective medical evidence").  In other words, an ALJ may consider the inconsistency between plaintiff's allegations and the objective medical evidence in the record, among other factors, in determining plaintiff's credibility.

Here, the ALJ noted that "[t]here is no evidence of severe disuse muscle atrophy or loss of muscle tone and bulk that would be compatible with his alleged inactivity and inability to function.  The claimant did not demonstrate severe functional mental limitations to his doctors for any continuous period of 12 months."  AR at 35.

Plaintiff argues that he did not claim to have suffered from any impairments that would be expected to cause "severe disuse muscle atrophy" or "loss of muscle tone and bulk."  Dkt. 11 at 4.  For example, he claimed to do some limited household chores and take public transportation to medical appointments.  *Id*.  Plaintiff also claims that the medical record corroborates his testimony regarding the severity of his impairments, including his uncontrolled diabetes, gout, depression, and visual impairments.  *Id.* at 5.  In addition, plaintiff points out that he was diagnosed with depression during his May 2011 consultative examination, and was already taking Zoloft.  AR at 280.  Similarly, in July 2011 he was referred for a psychiatric consultation, AR at 277, and diagnosed with depression and possible borderline personality disorder and his antidepressant was increased.  AR at 277, 279.  At the hearing in June 2012, plaintiff alleged continued depression.  AR at 49.  Plaintiff argues that "this evidence shows that [his] depression had lasted or was expected to last for more than 12 months at the time of the ALJ's decision," which is presumably why the ALJ found plaintiff's depression to be a "severe" impairment at step two.  Dkt. 11 at 5-6.

Plaintiff's arguments that he has not alleged impairments that would result in apparent muscle atrophy, and that he has been diagnosed with and treated for depression since at least

REPORT AND RECOMMENDATION - 14

May 2011, are well-taken.  Thus, the objective medical evidence cited by the ALJ is not a clear and convincing reason for the ALJ to discount plaintiff's testimony.  As discussed below, however, the ALJ's other stated reasons cited do meet the clear and convincing standard.  The fact that one reason provided by the ALJ for discrediting a claimant's testimony should be properly discounted does not render the ALJ's overall determination invalid, as long as that determination is supported by substantial evidence.  *See Tonapetyan*, 242 F.3d at 1148.  Thus, the ALJ's error did not undermine the ALJ's overall credibility assessment.

(b)    *Failure to Comply with Treatment Recommendations and Conservative Treatment*

A claimant's failure to assert a good reason for not following a prescribed course of treatment, or an ALJ's finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  *See also Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (citing *Tommasetti*, 533 F.3d at 1039) (The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'"); SSR 96-7p (according to agency rules, an individual's statements may be less credible if the level of frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure).  However, the ALJ "must not draw any inferences" about a claimant's symptoms and their functional effects from such a failure, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" that failure.  SSR 96-7p.

1    The ALJ found that plaintiff's allegations "are not consistent with the treatment he

2    receives," and that he "has a long history of medication/treatment non-compliance."  AR at 35.

3    Although plaintiff "has access to free/low cost treatment through the County clinics/hospitals

4    . . . he is not fully compliant.  The record does not document that he has been too mentally

5    and/or physically debilitated to travel to treatment or to comply with treatment . . . [or]

6    impoverished to travel to treatment."  AR at 35.  In addition, the ALJ claims that "if the

7    claimant were as disabled as he claims, his doctors would have ordered more aggressive

8    treatment."  AR at 35.

9    Plaintiff concedes that he has been non-compliant with treatment, especially his

10    diabetes regimen.  Dkt. 11 at 6.  However, plaintiff claims that the ALJ failed to adequately

11    consider the circumstances that led to his noncompliance, including lack of funds for his

12    diabetes medications at times and his mental limitations.  *Id*. at 7 (citing AR at 57, 286-87).

13    As the Commissioner points out, although plaintiff has reported on at least one

14    occasion that his non-compliance was caused by the fact that he could not afford to buy his

15    insulin for his diabetes, AR at 286-87, on another occasion plaintiff failed to take his

16    medications for weeks despite having proper insurance coverage.  AR at 202-03.  Moreover,

17    plaintiff does not contest the ALJ's finding that plaintiff has access to free and low cost

18    treatment through the county clinics and hospitals.  AR at 35.  Plaintiff's argument that

19    plaintiff was "not a very strong or savvy advocate for his own needs" and therefore could not

20    have been expected to remain compliant is also unpersuasive.  As the Commissioner points

21    out, plaintiff has a high school education plus college, and was able to apply for unemployment

22    benefits and interview for jobs in finance and internet management.  AR at 45-48.  None of his

23    doctors opined that he lacked the mental capacity to comply with his treatment regimen.  Thus,

24

1    the ALJ did not err by finding that plaintiff's "long history of medication/treatment non-

2    compliance" is a clear and convincing reason for discounting plaintiff's credibility.  AR at 35.

3         In addition, the ALJ did not err by considering the fact that plaintiff has received only

4    conservative treatment for his impairments.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th

5    Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a

6    claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d

7    1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that

8    she experienced pain approaching the highest level imaginable was inconsistent with the

9    'minimal, conservative treatment' that she received").  Plaintiff's failure to comply with his

10   course of treatment, as well as the conservative treatment he has received, are both clear and

11   convincing reasons for the ALJ to discount his credibility.

12                    (c)      *Daily Activities*

13        In determining whether a claimant's symptom testimony is credible, the ALJ may

14   consider that claimant's daily activities.  *Smolen,* 80 F.3d at 1284.  The Ninth Circuit has

15   recognized "two grounds for using daily activities to form the basis of an adverse credibility

16   determination."  *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).  First, a claimant's daily

17   activities can "meet the threshold for transferable work skills." *Smolen,* 80 F.3d at 1284.

18   However, the claimant need not be "utterly incapacitated" to be eligible for disability benefits,

19   and "many home activities may not be easily transferable to a work environment."  *Id.*

20   Second, a claimant's daily activities can "contradict his [or her] other testimony."  *Orn,* 495

21   F.3d at 639.

22        When the ALJ asked plaintiff what he has been doing to pass the time since he stopped

23   working, plaintiff testified that he is just "trying to survive." AR at 51.  When the ALJ asked

24   what kind of activities plaintiff engages in, plaintiff responded, "Not leaving the house," before

REPORT AND RECOMMENDATION - 17

clarifying that he can "get out of the house.  I don't go far."  AR at 51.  The ALJ did not err by

finding that plaintiff's "activities of daily living are not consistent with the extreme limitations

he alleges.  The claimant told the psychological consultative examiner that he does his own

laundry and food preparation, he attends religious services on a regular basis, and occasionally

sees friends and family."  AR at 36.

        The fact that plaintiff's daily activities were inconsistent with his alleged limitations

can be a sufficient basis for rejecting his testimony.  An ALJ may properly consider a

plaintiff's "daily activities, such as . . . cooking, housekeeping, laundry, shopping" as evidence

that is inconsistent with a claim of disability.  *Rollins v. Massanari,* 261 F.3d 853, 857 (9th

Cir.2 001).  *See also Stubbs–Danielson,* 539 F.3d at 1175 (citing with approval the ALJ's

finding that "normal activities of daily living, including cooking, house cleaning, doing

laundry, and helping her husband in managing finances . . . tend to suggest that the claimant

may still be capable of performing the basic demands of competitive, remunerative, unskilled

work on a sustained basis."); *Thomas*, 278 F.3d at 959 (the ability to "perform various

household chores such as cooking, laundry, washing dishes, and shopping" is a clear and

convincing reason to discount testimony that is inconsistent with the performance of these

activities).

        The ALJ did not err by noting plaintiff's report to Dr. Izzi that he does his own laundry,

prepares all his own food, attends religious services with a neighbor on a regular basis, and

sees friends and family.  AR at 36, 225.  In addition, plaintiff testified at the hearing that he is

able to use public transportation, attend to self-care independently, cook for himself, grocery

shop by himself, walk several blocks to the store, and watch sports and news on television.  AR

at 52-55.  The ALJ reasonably found that plaintiff's daily activities conflicts with the degree of

limitation he alleged.

REPORT AND RECOMMENDATION - 18

1

          (d)       *Honesty Regarding Sources of Income; Unemployment Benefits*

2           The ALJ also found that plaintiff "was not entirely forthcoming about the source of his

3  income after the alleged onset date.  He disclosed that he received money from his father-in-

4  law, but it took prompting for him to admit that not only had he received States disability

5  benefits, but also unemployment benefits."  AR at 36.  The ALJ noted that "when asked if he

6  was looking for work because he represented to unemployment that he was ready, willing and

7  able to work, the claimant said, no he was not.  However, when I asked if he had applied for

8  work, the claimant admitted that he put in applications for work since the alleged onset date

9  and he went on interviews, but he never got called back."  AR at 36.  In addition, when the

10  ALJ asked plaintiff if he gets general relief or food stamps, plaintiff "initially said no, but then

11  said, yes, general relief.  The claimant's evasiveness and willingness to tell unemployment that

12  he could work, while at the same time telling Social Security he cannot work, suggests that the

13  claimant is willing to stay whatever he thinks is necessary in order to obtain benefits." AR at

14  36.  The ALJ concluded that this behavior "indicates that the claimant's subjective reports are

15  not the most reliable or credible source of information."  AR at 36.

16           As discussed above, in assessing the claimant's credibility, the ALJ may use ordinary

17  techniques of credibility evaluation, such as considering any inconsistent statements in the

18  claimant's testimony.  *See Tonapeytan*, 242 F.3d at 1148.  Plaintiff's contention that the ALJ

19  needed to consider plaintiff's "low IQ and memory scores" before finding that plaintiff's

20  behavior during the hearing to be less than forthcoming, is unpersuasive.  The ALJ could

21  reasonably consider plaintiff's behavior in discussing his various sources of income and

22  benefits during the hearing to be evasive, based upon plaintiff's partial or changing responses

23  to the ALJ's questions.  AR at 45-48.  The ALJ's conclusions were based on inferences

24  reasonably drawn from evidence in the record, and the Court is not free to substitute a different

1    interpretation. *Batson*, 359 F.3d at 1193.  Plaintiff's failure to be fully forthcoming about his

2    various sources of income during the hearing was a clear and convincing reason for the ALJ to

3    discount his credibility.[5]

4                              (e)    *Inconsistent Statements*

5            Finally, the ALJ identified inconsistencies in plaintiff's reporting regarding his vision

6    and plaintiff's social life that eroded plaintiff's overall credibility.  AR at 36.  Specifically, the

7    ALJ pointed out that plaintiff initially reported that he "can't read books, menus or

8    newspapers" due to his vision.  However, he later amended this testimony by stating that "he

9    can't read without eyeglasses.  He then said that his glasses are outdated.  He then said that he

10   can't get new glasses until he has his eyes operated on.  He said that he had an appointment to

11   have his left eye fixed today, but he had the hearing.  He admitted that he can still read a little,

12   that he has problems with the right eye on the computer, but he can still watch sports and news

13   on the television."  AR at 36.  The ALJ noted that "later in testimony, the claimant said that he

14   can use the computer, but it is a little blurry.  He enjoys watching the NBA and NFL on

15   television, and he watches news programs on the television."  AR at 36.

16           With respect to plaintiff's social life, the ALJ pointed out that plaintiff initially said "he

17   had not left the house since August 2008.  He then admitted that he does leave the house and

18   that he is able to take the bus," and that he can go to church with a neighbor and go to the

19   grocery store by himself.  AR at 36.  Although plaintiff denied having any male or female

20

21          _____

            [5] The parties agree, however, that the ALJ should not have relied upon plaintiff's

22   receipt of unemployment benefits because there is no evidence in the record that plaintiff held
     himself out as available for full-time, as opposed to part-time, work.  *See Carmickle v. Comm'r*

23   *of the Soc. Sec. Admin.,* 533 F.3d 1155, 1161-62 (9th Cir. 2008) (holding that although "receipt
     of unemployment benefits can undermine a claimant's alleged inability to work fulltime . . . the

24   record here does not establish whether Carmickle held himself out as available for full-time or
     part-time work.  Only the former is inconsistent with his disability allegations.").

     REPORT AND RECOMMENDATION - 20

1    friends or relatives, "the claimant did not mention his wife that he got back together with after

2    their separation."  AR at 36.

3         As discussed above, contradictions within a claimant's testimony or between testimony

4    and other evidence of record provide a valid basis to discount his credibility. *See Light v.*

5    *Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).  Thus, because the majority of the

6    ALJ's reasons for discounting plaintiff's credibility are valid and supported by substantial

7    evidence, and the ALJ's adverse credibility should be affirmed.  *See Batson*, 369 F.3d at 1197.

8         C.    The ALJ Did Not Err in Assessing Plaintiff's RFC, or at Step Five

9         Finally, plaintiff contends that the ALJ's RFC assessment and hypothetical question to

10   the VE were deficient because they failed to fully reflect plaintiff's actual limitations, as

11   reflected by plaintiff's testimony.  Thus, plaintiff's remaining assignment of error is essentially

12   a restatement of his previous arguments regarding the medical evidence.

13        Because the Court has affirmed the findings of the ALJ as to plaintiff's prior

14   assignments of error, it must also conclude that there was no error in determining plaintiff's

15   RFC.  Plaintiff has pointed to no credible evidence, apart from plaintiff's subjective complaints

16   which were rejected by the ALJ, establishing the additional limitations that he believes should

17   have been included in the RFC assessment.  Accordingly, the ALJ did not err by omitting these

18   additional limitations from the RFC assessment.  *See Carmickle v. Commissioner, Soc. Sec.*

19   *Admin.*, 533 F.3d 1155, 1164–65 (9th Cir. 2008) (holding that an ALJ's RFC assessment need

20   not include impairments for which the medical records do not establish any work related

21   impairments).

22        Similarly, plaintiff has not demonstrated any deficiency in the ALJ's hypothetical

23   question posed to the VE.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir.

24   2008) (rejecting a claimant's argument that a hypothetical question was incomplete when the

REPORT AND RECOMMENDATION - 21

claimant simply restated her arguments against the RFC finding); *Bayliss*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (recognizing that an ALJ must include all limitations supported by substantial evidence in a hypothetical question to the vocational expert, but may exclude unsupported limitations and disregard VE testimony premised on such limitations).  As discussed above, the ALJ properly determined that plaintiff's vision problems would not affect his RFC.  Furthermore, at the hearing the ALJ asked the vocational expert whether an individual with mild visual limitations due to poor vision in his right eye could perform other jobs in the national economy.  AR at 61.  The vocational expert testified that plaintiff could perform the jobs of laundry worker, hospital cleaner, and factory helper, and that these jobs would accommodate plaintiff's vision impairments.  AR at 62.  Accordingly, plaintiff has not demonstrated error by the ALJ at step five, because the ALJ included all the limitations she found supported by substantial evidence in the hypothetical question posed to the vocational expert.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED, and this matter be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 28, 2014**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 5, 2014**.

REPORT AND RECOMMENDATION - 22

1    This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

2 seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3 assigned District Judge acts on this Report and Recommendation.

4    DATED this 14th day of November, 2014.

5

6                                                     James P. Donohue
                                                _____
7                                                JAMES P. DONOHUE
                                                United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 23